REASON BURNS AND WALTER BURNS v. THE STATE.

No. 198. Decided December 22, 1909.

Rehearing denied March 9, 1910.

**1.—Murder—Charge of Court—Mutual Combat—Abandonment of Difficulty.**

. Where, upon trial for murder, there was some evidence calling for a charge on mutual combat; but there was also evidence of an abandonment of the difficulty, and an effort on the part of defendants to have a peaceful settlement with deceased; the court in submitting the issue of mutual combat should have also given in charge the opposite or alternative side presented by the evidence of the defense, and should have submitted a charge on the abandonment of the difficulty, and the right of self-defense.

**2.—Same—Charge of Court—Mutual Combat—Co-Defendants—Self-Defense.**

Where, upon trial for murder, against two defendants, who were brothers, the evidence showed that the right of self-defense of each differed from that of the other, and that one simply accompanied the other to meet the deceased for the purpose of making a peaceable settlement, when the deceased fired upon both and was killed by the shots of both, it was reversible error to so mingle the rights of the two defendants, as to place the right of self-defense of each on the same basis, and to apply the law of mutual combat to both.

**3.—Same—Charge of Court—Principals—Self-Defense.**

Where, upon trial for murder, the evidence showed that the deceased had insulted one of the defendants, who was unarmed, and had invited the latter to meet him at a certain time and place; and that defendant did so, asking his brother to accompany him, who went as a peacemaker; and when there was also evidence of defendant's purpose of a peaceable settlement with deceased, it was reversible error, in the court's charge on principals and self-defense, to predicate these charges on the theory that the defendants acted together for the purpose of mutual combat to fight deceased with deadly weapons, and to place their basis of defense on the same state of facts, and to confuse their rights of self-defense.

**4.—Same—Charge of Court—Manslaughter.** ·

Where, upon trial for murder, against two defendants, the facts of the case were not the same as to both, it was reversible error to so charge the jury on manslaughter that the agitation of the mind of one of the defendants furnished a criterion by which the other could be convicted of manslaughter or acquitted of murder in either degree.

**5.—Same—Charge of Court—Co-Defendants—Confusing Rights.**

Where, upon trial for murder, against two defendants, the evidence did

not place the defendants in the same light in regard to the homicide, it was reversible error to connect them so in the charge of the court as to make the idea prominent that they were both principals in the transaction, and to base their right of self-defense on the same plane.

Appeal from the District Court of Grimes. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary for each defendant.

The opinion states the case.

*Buffington & Buffington* and *A. F. Brigance* and *W. W. Meachum,* for appellants.—On question of charge of court: Voight v. State, 53 Texas Crim. Rep., 268; Gardner v. State, 40 Texas Crim. Rep., 19.

On the question of the court's charge on the question of mutual combat, manslaughter and self-defense: Kannmacher v. State, 51 Texas Crim. Rep., 118; Evans v. State, 6 Texas Crim. App., 513; Huddleston v. State, 54 Texas Crim. Rep., 93; Brown v. State, 54 Texas Crim. Rep., 121.

On question of court's charge on principals: Black v. State, 38 Texas Crim. Rep., 58; Lester v. State, 2 Texas Crim. App., 432; Reynolds v. State, 8 Texas Crim. App., 412.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Both appellants were convicted of murder in the second degree, their punishment being assessed at six years confinement in the penitentiary each.

The facts disclose that Walter Burns was a boy about 16 years of age, and his coappellant, Reason Burns, was about 18 years of age, and were brothers. Deceased was 22 years of age. Appellants' father owned a farm spoken of by the witnesses as the "Bottom Field." The local option hog law was in effect in that section of the country where the farm was situate. Deceased, Monroe Peteete, owned some hogs, which were in the habit of depredating upon the farm of the elder Burns. These hogs had been taken up by the father of appellants and placed in a pen. He had taken care of the hogs, and for this there was a claim of a small account. Deceased, aided by others, went to the place armed, and in this manner took the hogs and drove them away. The younger Burns, Walter, was in charge of the place and the hogs at the time of this occurrence. The conduct of deceased was overbearing and insulting in regard to the hog transaction, and the evidence discloses that he made threats against the Burns family. As we understand the record, these threats were more pointedly directed against Walter than against Reason, if in fact Reason was included in the threats. However this may be, deceased made threats against the Burns family, even to the extent of taking their lives if they did not cease interfering with his hogs. On the day of the homicide, which was Sunday, appel-

lant Walter Burns, Peteete, and another Peteete, and the witness Hewett attended a gathering of some character at a country church. Walter was the only member of the Burns family present. There was a barrel of water near the little church for the accommodation of those who attended. Deceased and others were going towards the barrel of water and Walter Burns was coming from it. Passing each other deceased pushed against Walter Burns. Shortly or immediately after this occurred Walter Burns called deceased to one side, ten or twelve steps from the crowd, and asked for an explanation of his conduct, why he did it, and what he, Walter, had done to him. The language quoted in regard to this matter is about as follows: Walter Burns quietly called said Monroe Peteete away to one side of the crowd, and said to him, "What did you do me that way for?" and, "What did I do to you?" ' Deceased replied: "God-damn you, if you don't like it, don't take it." Walter Burns then said: "I suppose you told my father that if we bothered your hogs again or penned the hogs again, we may just as well hunt our black box?" To which deceased replied: "God-damn you, I mean it." And he unbuttoned his coat and put his hand on his six-shooter, and Walter Burns replied: "I haven't got any weapon, not even a pocket-knife." Deceased looked at his watch and said: "It is twenty-five minutes past four, and I will give you until six o'clock to meet me at Keith," and Walter Burns said, "I will try and do so." Keith is a little village about a couple of miles from the church where this conversation occurred, and in the direction of where appellants' father resided. Walter Burns got on his horse, galloped home, going by his brother-in-law's residence, got a shotgun; having no ammunition, he went home and secured some. While at home he saw his brother and codefendant Reason, and asked him to go with him to the meeting at Keith. Reason finally agreed to do so, and started to go unarmed. Their father told Reason to go along with Walter and try to prevent any trouble, but further told him that there might be danger and he had better take a gun. Thereupon they secured another shotgun, which Reason carried with him. The evidence is to the effect that they galloped back to the store, which is about three miles, arriving at the store about on time, at six o'clock. En route to the store from home they met the witness Blount, who inquired their mission, whereupon Reason informed him there had been some trouble between his brother and deceased, and they were going down to try to settle it and prevent any difficulty. Upon reaching Keith they stopped about fifty or seventy-five yards from the store where deceased, Hewett and another Peteete, a cousin of deceased, had been in waiting for some time, half an hour to an hour. Deceased and the other two parties were about the gallery of the store at the time appellants arrived upon the scene. As before stated, appellants stopped about fifty or seventy-five yards from the store, whereupon deceased walked out within ten steps of them. The witnesses describe the rela-

tion of the parties to each other at the time as being about ten steps apart, forming a triangle, with about that intervening space between the two defendants and between each of them and deceased. When deceased reached that point the testimony shows the following conversation, in substance, occurred: Appellant Reason Burns spoke to deceased, and said, "Hello, Monroe," and deceased said, "Howdy, Reason." Reason asked him how did the dinner come out? The dinner seems to have been the occasion of the meeting at the church. Deceased replied, "All right, by God; I reckon, by God, you come to settle it." Reason said, "No, I came here to settle it and reason it with you all." Deceased said, "I haven't got any reason for you Goddamn sons-of-bitches," and immediately drew his pistol and fired at Walter Burns, and then turned and fired as quickly as he could at Reason Burns. Walter Burns seeing the movement of deceased in pulling his pistol was getting off of his horse when the first shot was fired, which went through his coat about the top of the hip, as well as can be gathered from the facts. The shot fired at Reason seems to have missed entirely. Upon their reaching the ground both appellants fired with their shotguns, Walter firing the first shot. There were seven shots fired, four by appellants, two from each shotgun and three by deceased. Within a short distance, seventy-five or one hundred yards or such matter, lived Mr. Harrison, justice of the peace. He and his wife both testified on the trial. She testified to the effect that she saw the boys gather at the point designated and stop. She saw deceased walk out to them, and evidences of a conversation occurring between Reason Burns and deceased, though she was not within hearing distance. Mr. Harrison's testimony places him in position .so he did not see the movements of the parties at the time of the shooting, and perhaps he did not see them, but he immediately went to the scene of the shooting and found the dead body of Peteete with his pistol firmly grasped in his right hand with one of his fingers upon the trigger. Three empty shells were in the pistol. This is deemed a sufficient statement of the evidence as a predicate for discussion of the questions involved.

1. The court's charge is very lengthy, to which many exceptions were reserved, special charges asked and exceptions reserved to the refusal of the court to give those. The opinion would be too lengthy for any practical purpose to undertake to review all these questions. The court charged mutual combat. Appellant excepted to this charge, first, because it should not have been given at all, and, second, that it does not submit this issue as the law requires it, and involved questions in that phase of the case even if the evidence justified such charge. It is not intended to state specifically the different grounds of objection, but this general statement is sufficient. We think the charge on mutual combat, under the facts, was called for, but under the decision of Gardner v. State, 40 Texas Crim. Rep., 19, the court should have qualified this charge or given the opposite or alternative side as presented

by the evidence. If this charge was called for at all, it was under the testimony of the witness Hewitt, viewed in the light of occurrences at the church, which is substantially that when appellants rode up deceased walked out about sixty yards and stopped within ten steps of them, both appellants fired upon him. Just about the time they fired he says deceased reached for his pistol, though he intimates there may have been some conversation between the parties at the time, which he did not hear. In view of what occurred at the church between Walter Burns and deceased the court was perhaps authorized to charge on mutual combat, under the decision of Gardner v. State, supra. The court having given the charge, the appellants' side of the trouble should also have been given, because this was the crucial point in the case by reason of the previous conversation and occurrences between Walter Burns and deceased at the church before the meeting at Keith. The testimony is cogent to the effect that Reason Burns went for the purpose of settling the difficulty between the parties, and that his brother Walter was governed by him in the matter and acceded to it. This is the appellants' side of the case. If this was true, or whether true or false, it was an issue strongly supported by the evidence, which called for a charge with reference to an abandonment of the difficulty on the part of Walter Burns, and also in regard to Reason Burns' connection with it to the effect that if the parties had notified deceased of the fact that they did not want to fight, but wanted to settle the difficulty and reason it with him, and the deceased then drew his pistol and fired, they would disregard the question of mutual combat. The right of self-defense under those circumstances would have afforded them justification. Abandonment of the difficulty was in the case by the facts.

2. It is insisted the court erred in his charge in not sufficiently instructing the jury with regard to the position of Reason Burns in the case. We are of opinion this is a correct proposition. While the court, in a general way, instructed the jury that if the parties went in a peaceable manner, that the law of self-defense would not be impaired, yet it was a mingling of the two appellants together in such manner that Reason Burns' position in the case was so coupled with that of Walter Burns that it put the two together in all the movements from the time they got together, and even in regard to the previous matters at the church. Of course, if Walter Burns went for the purpose of engaging in a deadly conflict with deceased, and his brother went with him knowing their purpose, and assisted his brother in shooting deceased without offering terms of friendship or settlement or trying to settle the difficulty, then Reason Burns would be as guilty as would Walter Burns. But the evidence from appellants' standpoint excludes any such condition of affairs. The trial court, therefore, should have charged the jury that if Reason Burns accompanied his brother not for the purpose of engaging in a difficulty, but only for the purpose of trying to settle the difficulty between his brother and

deceased, and deceased forced the difficulty in the manner indicated in the statement of the case above, then he would not be a principal with Walter Burns even if Walter Burns was guilty of an unlawful homicide. In that condition of affairs he would be acting as a peace maker, urging a settlement of the difficulty, having no criminal connection with it, and only firing the shot after deceased had fired upon his brother. In such event Reason Burns should be acquitted, whatever may be the result of Walter Burns' case in the verdict of the jury. Mutual combat would in that event not apply to Reason. This issue should have been submitted to the jury in a clearcut, affirmative way. This issue stands out perhaps as prominently as any one shown by the facts.

3. Many exceptions were reserved to the court's charge in regard to the law of principals and the connecting of the two parties together in the transaction, especially it is urged that section 34 of the court's charge is error. That section of the court's charge is as follows: "You are further charged that the doctrine of self-defense herein above set out, applies to a defensive, and not an offensive act, and is limited to necessity or apparent necessity, and can not exceed the bounds of mere defense and prevention; and where a person voluntarily engages in a combat, knowing that it may or will probably result in death or some serious bodily injury that might produce the death of his adversary, or himself, he can not claim to have acted in self-defense. Therefore, if you find from the evidence beyond a reasonable doubt that a controversy existed between Monroe Peteete and Walter Burns, and that the said parties agreed to meet at Keith to settle the controversy, and the said defendant Walter Burns armed himself for the purpose of engaging in a difficulty with the said Monroe Peteete and that the said parties met according to agreement and fought together willingly, with deadly weapons and in a manner calculated to cause the death of one or both of the parties, and if you should find from the evidence beyond a reasonable doubt that the said defendant Walter Burns, either alone or acting with Reason Burns, as a principal, as the law of principals has been hereinbefore fully given you in these instructions, shot and thereby killed the said Monroe Peteete, then the said defendant Walter Burns could not justify on the grounds of self-defense, or the right of defense of his brother Reason Burns, but said defendant will be guilty of murder in the second degree or manslaughter, according as the facts and circumstances in evidence applied to the law herein given you, may justify the jury in finding. Upon the other hand, if the defendant Walter Burns did not go to the scene of the homicide for the purpose of engaging in a difficulty with the said Monroe Peteete, but for the purpose of settling a dispute between himself and deceased in a peaceable and friendly manner, and if the deceased became the aggressor and made an assault upon defendant in such a manner as caused defendant Walter Burns to have a reasonable expectation or fear of death or serious bodily injury, and act-

ing under such reasonable expectation or fear, he shot and killed deceased, then his right of self-defense would be complete, and, the killing thus occurring, it will be your duty to acquit the defendant Walter Burns. And in this connection you are also instructed that if the said defendant Walter Burns did not go to the scene of said homicide for such purpose, but went for the purpose of settling said dispute, and deceased became the aggressor and made an assault either upon the defendant Walter Burns and Reason Burns, or either of them, in such a manner as caused said defendant Reason Burns to have a reasonable expectation or fear of death or serious bodily injury, either on his own account, or on account of his said brother, and that acting under either or both of said beliefs or apprehensions, the said Reason Burns shot or participated in the shooting and killing of the deceased, you will acquit the defendant Reason Burns.

"Or, if you find from the evidence beyond a reasonable doubt that there existed an agreement between Walter Burns and the deceased to meet and settle their difference, if any, and although you should find from the evidence beyond a reasonable doubt that said Walter Burns and deceased intended and had agreed to fight with deadly weapons, yet, unless the defendant Reason Burns knew of such unlawful agreement, if any, or intention, if any, or if you should have a reasonable doubt as to the knowledge or intent of the said Reason Burns, then the right of self-defense of the said Reason Burns would not be impaired and his right to defend Walter Burns would not be impaired. But if you find from the evidence beyond a reasonable doubt that the defendant Reason Burns knew of such agreement, if any, between the said Walter Burns and the deceased to meet and settle their difference in a combat with deadly weapons in a manner likely to result in the death of one or both of said parties and the said Reason Burns armed himself and went to the place of the proposed difficulty for the purpose of engaging therein, then he could not justify on the grounds of self-defense or the defense of another, but if you should find from the evidence that the said Reason Burns armed himself and went to the place of the proposed meeting, if any, for the purpose of effecting a peaceable settlement, or if you have a reasonable doubt as to the intentions of the said Reason Burns in arming himself and accompanying the said Walter Burns to the place of the alleged difficulty, then the right of the said Reason Burns to defend himself against danger, either real or apparent, to himself or as to his right to defend Walter Burns against an attack or threatened attack at the hands of deceased, would be unimpaired, even though you may find from the evidence beyond a reasonable doubt that the intention of the said Walter Burns and the said Monroe Peteete may have been to engage in a combat with deadly weapons that might result in the death of one or both of said parties, and although you should find from the evidence beyond a reasonable doubt that the defendant Walter Burns may have had, at the time, an intention to take the life of de-

ceased." Many exceptions were reserved to this charge, and it may be stated, in a general way, this is the only charge in which the court undertakes to define, in a general way, to the jury the relation of Reason Burns to the transaction under his view of the case, and in it the court charged the matter in such a confused, complicated way that it may be more than doubtful that the jury understood exactly what the court meant by the language employed. This charge, as well as the other charges bearing upon this question, which are several in number and very lengthy, keep prominently before the jury the idea of principals and mutual combat, and none of them given by the court distinctly tell the jury the relation that Reason Burns would occupy to the case as his defensive testimony puts him. It also places before the jury prominently the fact that the meeting between Walter Burns and deceased was for the purpose of engaging in a deadly conflict. The State's evidence perhaps places it sufficiently strong before the jury for them to infer that fact and the charge of the court to submit the issue. Deceased had exhibited his pistol to Walter Burns at the church about an hour and three quarters before the fatal transaction, and demanded that Walter Burns meet him at Keith, but did not state for what purpose. It is an inference that this meeting might end in a deadly conflict, but the testimony introduced by appellants indicated that it might not be, and in fact they thought it might be settled without any serious consequences. All theories given in the court's general charge were predicated upon the fact that these appellants acted together in the difficulty under circumstances which constituted mutual combat to fight with deadly weapons, and that Reason Burns acted upon that theory or idea. The theory made by the evidence in regard to Reason Burns was negatively given under the circumstances stated in the charge, we are of opinion this was not sufficient. He was entitled to a clear, distinct and affirmative charge that if he went there for the purpose of settling the difficulty between his brother and deceased, and the deceased declined any offer of the sort and fired upon his brother, appellant had a right to defend not only his brother, but himself when deceased turned upon him, and this clearly and affirmatively so independent of any theory suggested by the evidence that he was acting with his brother. This charge is confusing, and fails to set out distinctly this particular issue in this connection, and is so misleading that we are of opinion the exceptions to it are well taken.

4. The charge of the court with reference to manslaughter is criticised. We reproduce this part of the charge, which is as follows: "By the expression adequate cause is meant such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

"Any condition or circumstance capable of creating and which does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied

by bodily pain, or not, may be adequate cause and whether such adequate cause existed for such sudden passion (if any there was) it is for you to determine, and in determining this question as well as all other matters before you, you will consider all the facts and circumstances in evidence in this case." This is the entire charge in regard to manslaughter as given by the court except the charge with reference to the punishment, which is as follows: "If you believe from the evidence beyond a reasonable doubt that Reason Burns, with a gun, shot and killed Monroe Peteete, but you further believe that at the time of such killing the mind of said Reason Burns was under the influence of sudden passion, aroused by adequate cause, as the same is explained to you in this charge, and you further believe that the said Walter Burns was present when said offense, if any, was committed by the said Reason Burns, and then and there knew of the unlawful intent of said Reason Burns to take the life of the said Monroe Peteete, if he intended to take the life of Monroe Peteete, and did aid said Reason Burns by acts or encourage him by words or gestures in the commission of said offense, if any, you will find the defendant Walter Burns guilty of manslaughter and assess his punishment at confinement in the penitentiary for a term of years not less than two nor more than five. But you are charged in this connection that if the defendant Walter Burns was present and did not aid nor abet the said Reason Burns in the commission of said crime, if any, or if you have a reasonable doubt thereof you will acquit the defendant, unless you find him guilty under other paragraphs of this charge." Various exceptions are reserved to the charge on manslaughter, and we have copied it as given. This charge nowhere instructs the jury under what circumstances Reason Burns would be guilty of manslaughter. It does instruct the jury in giving the punishment that if Reason Burns was agitated by passion and Walter Burns acted with him as a principal in the matter Walter Burns would be guilty. The definition of manslaughter is not given nor applied to Reason Burns. A most general definition is given of that phase of the law, but nowhere applied to Reason Burns as to punishment, and it made Walter Burns' right to a charge on the law of manslaughter depend upon the condition of Reason Burns' mind as to whether it was agitated by passion or not, and not upon the condition of Walter Burns' own mind. We think this was error. The facts of the case are not the same as to both appellants, nor could the fact that one of the appellants' mind was agitated by sudden passion rendering it incapable of cool reflection furnish the criterion by which the other could be convicted from the standpoint of manslaughter or acquitted of murder in either degree.

5. This case presents many serious and interesting questions, and the facts from the appellants' standpoint, and some testimony introduced by the State, do not put the two appellants in the same light in regard to the transaction, and yet the court connects them practically all the way through and makes very prominent the idea of their being

principals in the transaction. It occurs to us that the case summed up briefly may be thus stated: There may be sufficient evidence to submit the issue of mutual combat to fight with deadly weapons. There is testimony which tends to show that such a meeting may not have been contemplated even by Walter Burns, and certainly not by Reason Burns, and that the going of the parties to the place of the designated meeting may have been for a different purpose, that is, to settle the difficulty. This is especially so with reference to Reason Burns, and the evidence strongly preponderates, as we understand this record, that this is true as to Reason Burns. That upon another trial his attitude in the case should be clearly and affirmatively given in charge to the jury. If the parties went to the place of the homicide for the purpose of engaging in a mutual combat with deadly weapons, the survivor of the transaction might be guilty at least of murder in the second degree or of manslaughter. Upon another trial these two issues should be appropriately submitted to the jury. Again, the jury should be told that if both parties went to the place designated for the purpose of settling the difficulty without resorting to arms, or for the purpose of settling the difficulty amicably, and deceased shot at them, the law of self-defense would apply. The jury should be further instructed definitely and affirmatively that if Reason Burns went there for the purpose of settling the difficulty between the parties and not for the purpose of killing or engaging in a deadly conflict, that he would not be guilty whatever may have been the object or purpose of Walter Burns. The jury should also be instructed that if after the meeting at the church between Walter Burns and deceased, that Walter Burns had changed his mind in regard to engaging in the difficulty and tendered deceased an amicable settlement of the difficulty through his brother Reason, then their right of self-defense would in nowise be abridged if deceased declined the settlement and began the difficulty. This would constitute abandonment of the difficulty.

As the record presents this matter we are of opinion the judgment should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

[Rehearing denied March 9, 1910.—Reporter.]