## WALTER BURNS v. THE STATE.

### No. 1729.   Decided October 23, 1912.

### Rehearing denied November 13, 1912.

**1.—Murder—Mutual Combat—Sufficiency of the Evidence.**

Where, upon trial of murder, the defendant was convicted of manslaughter, and the evidence showed that the parties met by agreement to engage in a mutual combat, the conviction was sustained.

**2.—Same—Evidence—Res Gestae.**

Where, upon trial of murder, the defendant and his brother were jointly indicted, but tried separately, and the evidence showed that they acted together at the time of the commission of the offense, there was no error to admit testimony that the brother of the defendant within about a hundred yards of the killing upon leaving the scene of the homicide at full speed, waived his gun and hallowed.

**3.—Same—Verdict—Words and Phrases.**

Where the word "thee," could be readily read as "three," and the word was so pronounced at the reading of the verdict, and sentence duly entered thereafter, there was no reversible error.

**4.—Same—Charge of Court—Mutual Combat.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed a mutual combat, there was no error in the court's submission of this issue, and that if the jury so found that the appellant could not claim self-defense.

**5.—Same—Charge of Court—Abandonment.**

Where, upon trial of murder, there was evidence of an abandonment by defendant of mutual combat, the court properly instructed the jury that thereby he would not forfeit his right of self-defense.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction, there was no error.

Appeal from the District Court of Walker. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*W. W. Meachum* and *T. P. Buffington* and *A. F. Briggance* and *Dean, Humphrey & Powell,* for appellant.—On question of acts and declarations of codefendant: Simms v. State, 10 Texas Crim. App., 131; Armstead v. State, 22 id., 51; Ex parte Kennedy, 57 S. W. Rep., 648.

On question of verdict of the jury: Keeler v. State, 4 Texas Crim. App., 527; Taylor v. State, 5 id., 569; Harwell v. State, 22 id., 251; Wilson v. State, 12 id., 481.

On question of intent: Shannon v. State, 35 Texas Crim. Rep., 2.

*C. E. Lane,* Assistant Attorney-General, and *F. A. Berry* and *Hill & Elkins,* for the State.

PRENDERGAST, Judge.—Appellant was convicted of manslaughter and his penalty fixed at three years in the penitentiary.

Originally appellant and his brother, Reason Burns, were jointly indicted for murder. They were first tried jointly and convicted. On appeal the judgment was reversed. The case is reported in 58 Texas Crim. Rep., 463.

Afterwards a severance was had and the venue properly changed from Grimes to Walker County. Reason Burns was there first tried and convicted, and on appeal that conviction was affirmed (65 Texas Crim. Rep., 175, 145 S. W., 356). In the reports of the other trials a sufficient statement of the case is made. The testimony by the State on the trial of appellant was substantially the same on this as on the trial of the Reason Burns case. In that trial Reason Burns testified, but Walter did not; in this, of course, Reason did not, but Walter did testify.

There was material evidence by Walter, appellant, in this that was not in the Reason Burns case. In this, it was shown that a state of hostility existed between appellant and deceased about some hogs for a considerable time, more than, or about a year and a half before the killing. Several clashes had occurred between appellant and deceased during this time—each was mad at the other.

On the evening of the killing appellant and deceased were both at a neighborhood preaching point. In meeting on the grounds, deceased either accidently or on purpose, ran against appellant striking his shoulder against appellant's. At the moment neither said anything to the other; very soon afterwards appellant, reflecting on the matter, determined to ascertain whether it was accidental or an affront. He quietly approached deceased, called him off several steps and asked him why he did him that way and what did he do it for. Deceased replied, "God damn you, if you don't like it you don't have to take it." Appellant said, "I suppose you said if we bothered your hogs or penned them we just as well buy our black box." Deceased replied, "Yes, God damn you, and I meant it," and appellant stepped back and said, "I have no weapons—not even a pocket-knife." Deceased pulled out his watch and said that it was something past 4 o'clock and he gave appellant until 6 o'clock to meet him at Keith. Appellant told him he would try and do so. Appellant saw deceased's pistol at this time, when he threw his coat back and said, "I am ready right now." That is how came appellant to then say he had no weapons— not even a pocket-knife. At once after this appellant left the grounds for his home, riding rapidly all the way. In going to his home he had to pass a sister's. He borrowed a loaded double-barrel shotgun from her; then continuing to ride rapidly, went to his father's. After consultation with his father and brother Reason they determined to go on to Keith and meet deceased, appellant claiming that their mission in going to meet him was a peaceable one and for the purpose of settling their difficulty amicably. However, before leaving, he sent for another loaded gun for his brother Reason. When debating between the father and the two sons whether Reason should take a shotgun with him, his father told them, "Yes, to take the gun that that fellow (deceased) will get you down there and kill you like a bunch of hogs." In going from where this difficulty at the church had occurred between appellant and deceased, appellant saw one of the State's witness who asked him if he was in a hurry. He replied, "Yes, I am in an awful big hurry." He was then asked what was the matter and replied, "I have had a spat since you left." He was asked "who with." He replied deceased. He was then asked what was the matter and said, "He has been cursing me and I aint going to take it and I am going off after some buck-shot" and appellant "lit out." He went off up the road in a lope. Immediately after this trouble between appellant and deceased at the church and after appellant had left for his home to arm himself and meet deceased at Keith, deceased, with companions, also left the church for Keith which was some six miles distant. Deceased with his companions arrived at Keith sometime before appellant and his brother reached there and waited about there until Walter and his brother appeared on the scene. They at once met and the killing immediately followed. Deceased was armed with a six-shooter, and on the occasion fired at

least one, if not more, times at the appellant or his brother. Immediately after the killing, appellant and his brother mounted their horses and rode rapidly under whip away from the scene towards their home. At a distance of about a hundred yards from the killing both appellant and his brother repeatedly holloed,—his brother just in front waving his gun back and forth over his head at the time.

It is unnecessary to give in detail the evidence on these points. From it all it clearly and sufficiently authorized the jury to believe that the parties, deceased, and appellant by agreement met at Keith for the purpose of fighting it out or engaging in a mutual combat.

The State, over the objections of appellant, proved by several witnesses that Reason Burns within about a hundred yards of the killing, upon leaving the scene at full speed under whip, waved his gun and holloed. Appellant proved this same thing by Mrs. Turner, one of his witnesses, but after she had so testified, he made a motion to exclude her testimony from the jury, which the court declined to do. This testimony was clearly res gestae and admissible.

By another bill it is shown that the jury brought in this verdict: "We, the jury, find the defendant guilty of manslaughter and assess his punishment at three years in the State Penitentiary," which was read in open court, the appellant and his attorneys being present and hearing it. The court was not satisfied with the verdict and had the jury to amend the verdict and write it in this way: "We, the jury, find the defendant not guilty of murder in the second degree, but we, the jury, find the defendant guilty of manslaughter, and assess his punishment by confinement in the penitentiary for a term of three years," which verdict was also read in open court in the presence and hearing of appellant and his counsel, and "thee" was read "three" and so understood by all parties. No objection whatever was then made to this mis-spelling, if so, of the word "three" and this matter was not presented until a motion was made thereafter to arrest the judgment because of it. The original paper on which the verdict was written has been sent up, properly authenticated. Both are written with a pencil, and the word "thee," if so, can as readily be made "three" as "thee." There was a contest over this matter in the lower court in hearing the motion to arrest the judgment; the Judge heard all the evidence and decided that this mis-spelling of "three" was not sufficient to require the granting of a new trial. The judgment of the court on this verdict was entered properly adjudging the appellant guilty and fixing his penalty at three years' confinement in the penitentiary, and so the sentence did. No possible injury has occurred to appellant by the mis-spelling of this word, if so. He and no one else could be misled thereby and such mis-spelling neither required nor authorized the lower court to grant a new trial because thereof and would not justify this court in reversing the case on that ground.

The court, while it gave quite a lengthy charge, gave a most accu-

rate and complete one, covering every phase of the case authorized or justified by the evidence and the law. It is a most admirable charge. It correctly stated the case; then briefly gave sufficiently of what murder in the first degree was so as to properly present the other matters in the case.   The appellant having theretofore been convicted of murder in the second degree only, was under the statute acquitted of murder in the first degree and no finding was authorized or required by this charge of murder in the first degree.   Then fully and correctly charged on murder in the second degree, manslaughter and self-defense in all of its phases as both applicable to appellant and to his brother Reason as raised by all phases of the testimony. He also correctly charged on principals.

Appellant complains of several short paragraphs of the court's charge.   One of these complaints is, that portions of the charge told the jury appellant could not claim self-defense if he and deceased mutually agreed to fight, etc.   In our opinion, the evidence on this point clearly and fully tended to show a mutual combat, or, at least, the jury could have so concluded, which made it necessary and proper for the court to correctly submit that question, which he did in the charge as a whole.   Another complaint of another paragraph of the court's charge is where the court submitted the question of an abandonment of said mutual combat with notice of such abandonment to deceased by either appellant or his brother, and if he did, then his right of self-defense would not be forfeited or in any wise abridged, because such last charge on the subject of abandonment pre-supposed an agreement of mutual combat, and there was no evidence of such mutual combat.   Clearly this was proper, and if it had not been submitted, appellant might have had some just cause to complain because it was not submitted.   None of the complaints as to the charge of the court are well taken.

The evidence is amply and clearly sufficient to justify the conviction.   In fact, it would have clearly justified a conviction for murder in the second degree.   The judgment will be affirmed.

*Affirmed.*

[Rehearing denied March 13, 1912.—Reporter.]